**IN THE UNITED STATES BANKRUPTCY COURT FOR THE
EASTERN DISTRICT OF TENNESSEE**

In re

                                      Case No.  05-33620

LARRY D. GRAVES

        Debtor

LARRY D. GRAVES

        Plaintiff

       v.                                      Adv. Proc. No.  05-3387

BGSA, LLC and
CITIZENS BANK OF BLOUNT COUNTY

        Defendants

**MEMORANDUM ON MOTION OF BG STAYIN
ALIVE PROPERTIES, LLC TO DISMISS OR IN THE
ALTERNATIVE FOR SUMMARY JUDGMENT**

**APPEARANCES:**    JOHN P. NEWTON, JR., ESQ.
                          9700 Westland Drive
                          Suite 101
                          Knoxville, Tennessee 37922
                          Attorney for Plaintiff

                          HAGOOD, TARPY & COX, PLLC
                          T. Lynn Tarpy, Esq.
                          Suite 2100 Riverview Tower
                          900 South Gay Street
                          Knoxville, Tennessee  37902
                          Attorneys for Defendant, BG Stayin Alive Properties, LLC

                          GARNER, KULL, FREESTATE & CONNER
                          Christopher W. Conner, Esq.
                          Post Office Box 5059
                          Maryville, Tennessee  37802-5059
                          Attorneys for Defendant, Citizens Bank of Blount County

**RICHARD STAIR, JR.
UNITED STATES BANKRUPTCY JUDGE**

On December 13, 2005, the Plaintiff filed his Complaint asking the court (1) to issue an injunction enjoining the Defendant, BG Stayin Alive Properties, LLC (BGSA), from transferring Idleaire stock certificate number 24 (Idleaire Stock) at a public sale scheduled for December 16, 2005, and enjoining the Defendant, Citizens Bank of Blount County (CBBC), from transferring the Idleaire Stock at any time; (2) to reform the document between the Plaintiff and CBBC transferring the Idleaire Stock into an assignment or transfer for security purposes only; (3) to determine that the Idleaire Stock is property of the estate; and (4) to determine that BGSA has an unsecured claim and that its security interest did not attach since it was not perfected while the Plaintiff owned the Idleaire Stock.  The following documents are attached as exhibits to the Complaint:  (1) a Stock Assignment Separate from Certificate dated November 26, 2002; (2) a Promissory Note dated April 13, 2004, in the principal amount of $28,108.78; (3) a Promissory Note dated November 28, 2003, in the principal amount of $51,949.19; (4) a Proof of Claim in the amount of $837,297.64 filed by CBBC on July 27, 2005, in the Plaintiff's bankruptcy case number 05-33620; (5) a Proof of Claim in the amount of $53,389.25 filed by CBBC in the Plaintiff's bankruptcy case number 04-32926; (6) a Proof of Claim in the amount of $26,224.10 filed by CBBC in the Plaintiff's bankruptcy case number 04-32926; (7) an Affidavit executed by the Plaintiff on December 13, 2005, concerning the facts asserted in the Complaint; and (8) a letter dated December 5, 2005, from BGSA's attorney to the Plaintiff's attorney concerning the December 16, 2005 sale of the Idleaire Stock.

Contemporaneously with his Complaint, the Plaintiff filed a Motion for Preliminary Injunction seeking to enjoin both Defendants from transferring, selling, or otherwise disposing of the Idleaire Stock.  The court held a hearing on the Motion for Preliminary Injunction on December 15, 2005, and on December 20, 2005, it entered a Preliminary Injunction enjoining BGSA

from attempting to sell any portion of the Idleaire Stock, but denied the Plaintiff's Motion for Preliminary Injunction with respect to CBBC. The court also scheduled the trial of this adversary proceeding for January 30, 2006.[1]

CBBC filed its Answer on December 28, 2005, denying that the Plaintiff was entitled to his requested relief and averring as an affirmative defense res judicata and/or collateral estoppel as to the issues concerning transfer of the Idleaire Stock to CBBC. On December 30, 2005, BGSA filed its Answer also denying that the Plaintiff was entitled to his requested relief and averring as affirmative defenses that the Complaint fails to state a claim upon which relief can be granted, that the court lacks subject matter jurisdiction over the matter, that the Plaintiff has no standing to bring this action, and that the issues asserted by the Plaintiff are barred by res judicata and/or collateral estoppel.

Also on December 30, 2005, BGSA filed the Motion of BG Stayin Alive Properties, LLC to Dismiss or in the Alternative for Summary Judgment (Motion), asking the court to dismiss the Complaint for failure to state a claim upon which relief can be granted and for lack of subject matter jurisdiction. In the alternative, BGSA requests summary judgment, arguing that there are no genuine issues of material fact, and it is thus entitled to judgment as a matter of law. The Motion is supported by a Memorandum of Law, together with the court's October 25, 2005 Memorandum on Motions to Reject Executory Contract and to Lift the Automatic Stay filed in the Plaintiff's bankruptcy case. The Plaintiff filed his Response and Brief in Opposition to Motion to Dismiss Filed by Defendant, BGSA, LLC on January 31, 2006.

---

[1] On January 24, 2006, the court entered an Order continuing the trial to March 8, 2006.

# I

In the Complaint, the Plaintiff avers the following facts. On November 26, 2002, he executed a Stock Assignment Separate from Certificate (Stock Assignment) which states the following:

> FOR VALUE RECEIVED, Larry D. Graves hereby sell [sic], assign [sic] and transfer [sic] unto Citizens Bank of Blount County One Hundred Thousand (100,000) Shares of the Common Capital Stock of the IdleAir [sic] Technologies Corp. standing in Larry D. Graves [sic] name on the books of said corporation represented by Certificate No. 0024 herewith and do hereby irrevocably constitute and appoint Kevin Renfro, Attorney, attorney to transfer the said stock on the books of the within named Company with full power of substitution in the premises.

Ex. 1. Sometime thereafter, CBBC took possession of the Idleaire Stock. The Plaintiff states that, at that time, he also executed a promissory note and security agreement, whereby the Idleaire Stock was pledged as collateral, and that he, personally, did not owe any other debt to CBBC prior to that date, although the exhibits indicate that he executed notes and security agreements with CBBC on behalf of BGSA. The Plaintiff did not attach as exhibits to the Complaint any note or security agreement between CBBC and himself dated in November 2002.

The Plaintiff also states that he guaranteed notes between CBBC and BGSA, which were subsequently modified by an agreement dated in March 2003. The Plaintiff avers that the note is not in default and the Plaintiff's obligation thereunder is limited and is unsecured. The Plaintiff did not attach the guaranty or the March 2003 agreement as exhibits to the Complaint.

On June 1, 2004, the Plaintiff filed the Voluntary Petition commencing bankruptcy case number 04-32926 under Chapter 11 of the Bankruptcy Code.[2]  CBBC filed two proofs of claim in this case, attaching documentation in support thereof, including a Commercial Security Agreement dated November 28, 2003, which provides that CBBC was granted a security interest in the Idleaire Stock.  *See* COMPL. EX. 5; COMPL. EX. 6.  Bankruptcy case number 04-32926 was dismissed by Order entered June 1, 2005, based upon the Plaintiff's inability to propose a confirmable plan of reorganization.

On June 30, 2005, the Plaintiff filed the Voluntary Petition commencing his current Chapter 11 bankruptcy case, number 05-33620.  On July 27, 2005, CBBC filed a proof of claim in the amount of $837,297.64, based upon the unliquidated guarantee on the BGSA note, an April 13, 2004 note in the original principal amount of $26,108.78, and a November 26, 2003 note in the original principal amount of $51,949.19.  *See* COMPL. EX. 4.

On October 25, 2005, the court entered an Order supported by its Memorandum on Motions to Reject Executory Contract and to Lift the Automatic Stay (Memorandum Opinion), denying a Motion to Reject Executory Contract filed by the Plaintiff on June 30, 2005, as amended on July 7, 2005, and denying a Motion by BG Stayin Alive Properties, LLC to Lift the Automatic Stay.  This Order and Memorandum Opinion were issued following an evidentiary hearing held on October 3, 2005.  The issues before the court at this evidentiary hearing as defined in the Pretrial Order entered on September 7, 2005, were as follows:

---

[2] The court takes judicial notice of the Plaintiff's prior case pursuant to Rule 201 of the Federal Rules of Evidence.

> (1) is the Settlement Agreement [dated November 19, 2002, between the Plaintiff and BGSA] an executory contract; (2) can the Debtor reject the Settlement Agreement; (3) does rejection of the Settlement Agreement result in elimination of the security agreement with respect to the IdleAire stock; (4) whether cause exists to grant BGSA relief from the automatic stay pursuant to 11 U.S.C.A. § 362(d)(1) (West 2004); and (5) whether BGSA is entitled to relief from the automatic stay pursuant to 11 U.S.C.A. § 362(d)(2) (West 2004) because the IdleAire stock has no equity and is not necessary for an effective reorganization.

MEM. OP. at 5.  The court found that "[b]ased upon the evidence presented at trial . . . many of these issues are moot because the Debtor no longer owns the 100,000 shares of IdleAire stock represented by Certificate No. 0024."  MEM. OP. at 5.

## II

BGSA seeks dismissal of the Complaint for "lack of jurisdiction over the subject matter" under Rule 12(b)(1) of the Federal Rules of Civil Procedure, or for "failure to state a claim upon which relief can be granted" under Rule 12(b)(6).  FED. R. CIV. P. 12(b) (applicable in adversary proceedings by virtue of FED. R. BANKR. P. 7012(b)).

Subject matter jurisdiction may not be waived, and it may be raised at any time.  *Franzel v. Kerr Mfg. Co.*, 959 F.2d 628, 630 (6th Cir. 1992); *Robinson v. Mich. Consol. Gas Co., Inc.*, 918 F.2d 579, 582 (6th Cir. 1990); *Matuscak v. United States Bankr. Ct. Clerk (In re Rini)*, 782 F.2d 603, 608 (6th Cir. 1986) ("It is well established that parties cannot somehow waive jurisdictional objections, nor can they consent to the jurisdiction of a court when that court lacks jurisdiction over the subject matter of their dispute.").  With respect to motions to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the Sixth Circuit has adopted the following standard:

> At the outset we must emphasize a crucial distinction, often overlooked between 12(b)(1) motions that attack the complaint on its face and 12(b)(1) motions that

> attack the existence of subject matter jurisdiction in fact, quite apart from any pleadings. The facial attack does offer similar safeguards to the plaintiff: the court must consider the allegations of the complaint as true. The factual attack, however, differs greatly for here the trial court may proceed as it never could under 12(b)(6) or Fed. R. Civ. P. 56. Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction – its very power to hear the case – there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover the plaintiff will have the burden of proof that jurisdiction does in fact exist.

*RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1136 (6th Cir. 1996) (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 890 (3d Cir. 1977)).

On the other hand, when faced with a motion to dismiss under Rule 12(b)(6), the court must "construe the complaint in the light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff can prove a set of facts in support of its claims that would entitle it to relief." *Bovee v. Coopers & Lybrand, C.P.A.*, 272 F.3d 356, 360 (6th Cir. 2001); *Limor v. Beurger (In re Del-Met Corp.)*, 322 B.R. 781, 793 n.3 (Bankr. M.D. Tenn. 2005). Even though all factual allegations are accepted as true, the court "need not accept as true legal conclusions or unwarranted factual inferences." *Mich. Paytel Joint Venture v. City of Detroit*, 287 F.3d 527, 533 (6th Cir. 2002) (quoting *Morgan v. Church's Fried Chicken,* 829 F.2d 10, 12 (6th Cir. 1987)). The focus is on "whether the plaintiff has pleaded a cognizable claim." *Marks v. Newcourt Credit Group, Inc.*, 342 F.3d 444, 452 (6th Cir. 2003). The complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claim which would entitle [it] to relief." *Buchanan v. Apfel*, 249 F.3d 485, 488 (6th Cir. 2001) (quoting *Conley v. Gibson*, 78 S. Ct. 99, 102 (1957)).

**A**

First, the Plaintiff avers that he is seeking "to determine certain issues related to property of the estate pursuant to 11 U.S.C. § 541 and validity of liens under 544." COMPL. at 1, ¶ 3. He additionally "requests that the Court determine that the Debtor is the true owner of the [Idleaire Stock] and that the documents between the parties need to be reformed and that the Debtor be determined to be the current owner of the stock being held by the Bank." COMPL. at 5, ¶ 2. BGSA argues that the Complaint should be dismissed for lack of subject matter jurisdiction because these issues were already decided by the court in its October 25, 2005 Memorandum Opinion, and therefore, the causes of action alleged in the Complaint are precluded by res judicata and/or collateral estoppel. Based upon the facts asserted and the relief requested in the Complaint, the court finds that the doctrine of res judicata applies to the issues concerning ownership of the Idleaire Stock.

"The doctrine of res judicata, or claim preclusion, provides that a final judgment on the merits of an action precludes the 'parties or their privies from re-litigating issues that were or could have been raised' in a prior action." *Kane v. Magna Mixer Co.*, 71 F.3d 555, 560 (6th Cir. 1995) (*quoting Federated Dep't Stores, Inc. v. Moitie*, 101 S.Ct. 2424, 2428 (1981)). Res judicata, which "promote[s] the finality of judgments," *Sanders Confectionery Prods., Inc. v. Heller Fin., Inc.*, 973 F.2d 474, 480 (6th Cir. 1992), extinguishes "all rights of the plaintiff to remedies against the defendant with respect to all or any part or the transaction, or series of connected transactions, out of which the action arose." *J.Z.G. Res., Inc. v. Shelby Ins. Co.*, 84 F.3d 211, 215 (6th Cir. 1996)

(quoting RESTATEMENT (SECOND) JUDGMENTS § 24 (1982)).  In the Sixth Circuit, res judicata is based upon the following four elements:

> (1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their privies; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action.

*J.Z.G. Res., Inc.*, 84 F.3d at 215 (citing *Sanders Confectionery Prods., Inc.*, 973 F.2d at 480).

The doctrine of collateral estoppel, also known as issue preclusion, is an "extension" of the doctrine of res judicata.  *Ohio Cas. Ins. Co. v. Hryhorchuk (In re Hryhorchuk)*, 211 B.R. 647, 652 (Bankr. W.D. Tenn. 1997); *see also J.Z.G. Res., Inc.*, 84 F.3d at 214 ("The rules of res judicata actually comprise two doctrines concerning the preclusive effect of a prior adjudication, claim preclusion and issue preclusion.").  Collateral estoppel applies if the following requirements are met:

> (1) the issue in the subsequent litigation is identical to that resolved in the earlier litigation; (2) the issue was actually litigated and decided in the prior action; (3) the resolution of the issue was necessary and essential to a judgment on the merits in the prior litigation; (4) the party to be estopped was a party to the prior litigation (or in privity with such a party); and (5) the party to be estopped had a full and fair opportunity to litigate the issue.

*Santana-Albarran v. Ashcroft*, 393 F.3d 699, 704 (6th Cir. 2005).  Accordingly, "once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation."  *Montana v. United States*, 99 S. Ct. 970, 973 (1979).

Here, the crux of the Plaintiff's lawsuit stems around the November 26, 2002 Stock Assignment.  The Plaintiff asks the court to "rule that the [Stock Assignment] should be reformed and that the effect of that transfer be determined to be an assignment or transfer solely for security

9

purposes and not for ownership[,] . . . [and] Order reformation of the [Stock Assignment] and determin[e] that [the Idleaire Stock] is property of the estate." COMPL. at 4, ¶ 11. These issues, however, were actually litigated on October 3, 2005, and were ruled upon by the court in its October 25, 2005 Order for the reasons set forth in the accompanying Memorandum Opinion.

As stated in the Memorandum Opinion, the court determined that the Stock Assignment constituted an absolute transfer of the Idleaire Stock from the Plaintiff to CBBC, and accordingly, BGSA's motion for relief from the automatic stay was moot, because the Idleaire Stock was not property of the Plaintiff's bankruptcy estate. With respect to this issue, the court made the following findings in the October 25, 2005 Memorandum Opinion:

> At trial [on October 3, 2005], the Debtor testified that CBBC used this form document, but it was the intention of both the Debtor and CBBC to simply grant CBBC a security interest in the IdleAire stock. The Debtor did not, however, present a representative from CBBC to substantiate his testimony as to the parties' intentions with respect to the Stock Assignment. Furthermore, "in the absence of fraud or mistake, a contract must be interpreted and enforced as written, even though it contains terms which may seem harsh or unjust." *Gray v. Estate of Gray*, 993 S.W.2d 59, 64 (Tenn. Ct. App. 1998). The "usual, natural, and ordinary meaning of the contractual language," that the IdleAire stock was being sold, assigned, and transferred to CBBC, effectuated a transfer in the ownership of the IdleAire stock, not simply the granting of a security interest therein. *See Guiliano v. Cleo, Inc.*, 995 S.W.2d 88, 95 (Tenn. 1999). Irrespective of the Debtor's testimony of the parties' intentions, the fact is that the Stock Assignment served as an absolute transfer of the IdleAire stock to CBBC rather than CBBC's perfection of a secured interest in the stock.

MEM. OP. at 6 (footnote omitted).

The court also found that "the documents attached to CBBC's proof of claim filed in the Debtor's case on July 27, 2005, provide additional support for its findings that the Stock Assignment actually transferred ownership of the IdleAire stock to CBBC versus merely providing it with a

10

security interest." MEM. OP. at 7.  The Plaintiff relies upon the same proof of claim in this adversary proceeding, attaching it as Exhibit 4 to the Complaint.  With respect to this collective document, the court noted that "[o]ne document that is conspicuously missing from those [attached to the proof of claim as] listed above is the Stock Assignment.  Moreover, none of the documents attached to CBBC's proof of claim state that they are secured by 100,000 shares of IdleAire stock, and in fact, the IdleAire stock is not mentioned in any of these documents."  MEM. OP. at 8.

The fact that the Plaintiff now wishes to present proof that was available to him on October 3, 2005, to better substantiate his testimony that CBBC intended for the Stock Assignment to serve merely as collateral is irrelevant and under the doctrine of res judicata, the issues are precluded from being re-litigated.  The October 25, 2005 Order denying the Plaintiff's Motion to Reject Executory Contract and the Motion by BG Stayin Alive Properties, LLC to Lift Automatic Stay filed by BGSA was not appealed by the Plaintiff, or BGSA, and is now a final, nonappealable order.  The effect of the Stock Assignment was litigated and determined by the court, and the Plaintiff should have introduced any proof to the contrary at that time.  Likewise, the claims asserted by the Plaintiff in this adversary proceeding center around the Stock Assignment and whether it is property of the bankruptcy estate, which are identical "facts creating the right of action and of the evidence necessary to sustain each action." *Sanders Confectionery Prods., Inc.*, 973 F.2d at 484; *see also Browning v. Levy*, 283 F.3d 761, 773-74 (6th Cir. 2002) ("The final element of res judicata – that there be an 'identity of claims' – is satisfied if 'the claims arose out of the same transaction or series of transactions, or whether the claims arose out of the same core of operative facts.").

Finally, the same players were involved at that time as are now involved; i.e., the Plaintiff, BGSA, and CBBC. Although CBBC did not actively participate in the October 3, 2005 trial, it was, nevertheless, a party to the action by virtue of its status as a creditor of the Plaintiff in his Chapter 11 reorganization and by virtue of its interest in the Stock Assignment. *See Sanders Confectionery Prods., Inc.*, 973 F.2d at 480-81 (holding that a debtor's creditors "must . . . be considered parties for res judicata purposes."). Furthermore, CBBC, as one of the Plaintiff's twenty largest unsecured creditors as well as the holder and assumed first lienholder of the Idleaire Stock, was aware of the controversy surrounding the Idleaire Stock and the Stock Assignment.

The court finds that all of the elements have been satisfied and that res judicata applies, thereby precluding the Plaintiff from re-litigating the issues that were tried or should have been tried at the trial held on October 3, 2005. The court's October 25, 2005 Order is the final judgment of issues arising between the same parties, concerning identical facts. As such, the Plaintiff's claims with respect to reformation of the Stock Assignment and his prayer for a determination that the Idleaire Stock is property of the bankruptcy estate are barred, and BGSA's Motion to Dismiss shall be granted with respect to those issues.

**B**

The Plaintiff also asks the court to "determine that the interest of BGSA is an unsecured claim and that their security interest did not attach and perfect due to failure of their perfection instrument to record at a time that the Debtor owned the [Idleaire Stock] certificate." COMPL. at 6, ¶ 5. The court finds that it does not possess subject matter jurisdiction over this issue.

Jurisdiction over bankruptcy cases is conferred through 28 U.S.C. §1334 (2005), which provides, in material part that jurisdiction over "all cases under title 11" is exclusive to the federal courts by virtue of 28 U.S.C. § 1334(a), and that the federal courts have "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). Working in conjunction with § 1334, 28 U.S.C. § 157 (2005) addresses the procedures for bankruptcy cases. Pursuant to § 157(b)(1), bankruptcy judges have the authority to "hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11[,]" and by virtue of § 157(c)(1), "[a] bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11." 28 U.S.C. § 157(b)(1), (c)(1).

"Core proceedings" are all actions arising under title 11 and/or arising in a case under title 11, including those expressly designated by § 157(b)(2). Simply stated, a core proceeding "invokes a substantive right created by federal bankruptcy law or one which could not exist outside of the bankruptcy." *Sanders Confectionary Prods., Inc.*, 973 F.2d at 483. Cases "under title 11" refer to the actual bankruptcy cases "commenced in a federal district court or bankruptcy court with the filing of a petition [initiating the bankruptcy]." *Robinson*, 918 F.2d at 583. "Arising in" and "arising under" actions include matters "that arise only in bankruptcy cases" such as adversary proceedings and contested matters concerning issues contained in or provided for by the Bankruptcy Code. *Dally v. Bank One, Chicago, N.A. (In re Dally)*, 202 B.R. 724, 727 (Bankr. N.D. Ill. 1996).

Nevertheless, the bankruptcy court may also hear non-core proceedings that are related to bankruptcy proceedings; i.e., if "the outcome of the proceeding could conceivably have any effect

13

on the estate being administered in bankruptcy." *Robinson*, 918 F.2d at 583 (quoting *Pacor, Inc. v. Higgins (In re Pacor, Inc.)*, 743 F.2d 984, 994 (3d Cir. 1984)). A court may exercise related to jurisdiction if there is "some nexus between the action and the debtor's bankruptcy case[,]" *Beneficial Nat'l Bank USA v. Best Reception Sys., Inc. (In re Best Reception Sys., Inc.)*, 220 B.R. 932, 944 (Bankr. E.D. Tenn. 1998), or " if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." *Robinson*, 918 F.2d at 583 (quoting *Pacor*, 743 F.2d at 994). Related to jurisdiction is "'comprehensive' but not 'limitless[,]'" extending "to suits between non-debtor parties, but only if the action has 'an effect on the bankruptcy estate.'" *Best Reception Systems*, 220 B.R. at 944 (quoting *Celotex Corp. v. Edwards*, 115 S. Ct. 1493, 1498 n.5 (1995)).

In this case, the Plaintiff, who is a debtor-in-possession under Chapter 11, seeks a determination as to the status of the perfection by BGSA of its lien on the Idleaire Stock. Perfection of a lien on stock is a matter of state law, and as such, it is not a core proceeding, as it does not arise in or arise under title 11. Furthermore, because the Plaintiff is not the owner of the Idleaire Stock, and it is not property of his bankruptcy estate, there is no related to jurisdiction. A determination as to the perfection status of BGSA in the Idleaire Stock will, in no way, affect the administration of this bankruptcy case. Moreover, BGSA did not file a proof of claim in the Plaintiff's bankruptcy case prior to the November 1, 2005 deadline for filing claims, and because it was required to do so by virtue of Rule 3003(c)(2) of the Federal Rules of Bankruptcy Procedure,[3] it "shall not be treated

---

[3] Rule 3003(c)(2) provides, in material part, that "[a]ny creditor . . . whose claim or interest is . . . scheduled as disputed . . . shall file a proof of claim or interest within the time [fixed by the court..]" FED. R. BANKR. P. 3003(c).
(continued...)

14

Case 3:05-ap-03387-rs    Doc 23    Filed 02/06/06    Entered 02/06/06 13:54:58    Desc
Main Document    Page 15 of 15

as a creditor with respect to such claim for the purposes of voting and distribution." FED. R. BANKR. P. 3003(c)(2). Accordingly, the court does not have subject matter jurisdiction over this issue.[4]

### III

For the reasons previously stated, the court finds that it does not have subject matter jurisdiction over the causes of action asserted by the Plaintiff in his Complaint, and therefore, the Motion to Dismiss filed by BGSA shall be granted pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

An order consistent with this Memorandum will be entered.

FILED: February 6, 2006

                                                   BY THE COURT

                                                   /s/ RICHARD STAIR, JR.

                                                 RICHARD STAIR, JR.
                                                 UNITED STATES BANKRUPTCY JUDGE

---

[3](...continued)
The Plaintiff listed BGSA on his Schedule F - Creditors Holding Unsecured Nonpriority Claims as holding a disputed claim in the amount of $1,000,000.00.

[4] Likewise, the court questions the Plaintiff's standing to bring this action with respect to BGSA's security interest in the Idleaire Stock. Derived from Article III of the Constitution, standing is a prerequisite for subject matter jurisdiction in the federal courts, "an element of federal subject matter jurisdiction which cannot be waived and may be raised at any time by a party or by the court." *Yates v. Forker (In re Patriot Co.)*, 311 B.R. 71, 74 (B.A.P. 8th Cir. 2004) (citing *Magee v. Exxon Corp.*, 135 F.3d 599, 601 (8th Cir. 1998)); *see also O'Shea v. Littleton*, 94 S. Ct. 669, 675 (1974). "Standing depends on 'whether the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant his invocation of federal jurisdiction and to justify exercise of the court's remedial powers on his behalf.'" *Newport Acquisition Co. No. 1, L.L.C. v. Schiro (In re C-Power Prods., Inc.)*, 230 B.R. 800, 804 (Bankr. S.D. Tex. 1998) (quoting *In re Pointer*, 952 F.2d 82, 85 (5th Cir. 1992)). These requirements likewise apply to a plaintiff pursuing an adversary proceeding in the bankruptcy court. *See Smith v. Fairbanks Capital Corp. (In re Smith)*, 299 B.R. 687, 689 (Bankr. S.D. Ga. 2003).